## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

JOSHUA ISAIAH MONEY,         :
:
         Plaintiff,      :
:
v.         :     Case No. 4:24-cv-163-CDL-AGH
:
Officer WEST, *et al.*,     :
:
         Defendants.     :
_____

## ORDER AND RECOMMENDATION

*Pro se* Plaintiff Joshua Money, an inmate at Augusta State Medical Prison in Grovetown, Georgia, filed a Complaint under 42 U.S.C. § 1983 (ECF No. 1). In accordance with the Court's previous orders and instructions, Plaintiff filed a motion for leave to proceed *in forma pauperis* ("IFP") that includes a copy of his prison trust fund account information (ECF No. 8) and a response to the Court's show cause order (ECF No. 9). For the following reasons, Plaintiff's motions to proceed IFP (ECF Nos. 2, 8) are **GRANTED**, and Plaintiff's Eighth Amendment excessive force claims and his state law claims against Defendants Lewis, West, and Jackson shall proceed for further factual development. It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice**.

## MOTIONS TO PROCEED IN FORMA PAUPERIS

Plaintiff first seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). The certified copy of Plaintiff's prison trust fund account information shows that he has a spendable balance of zero.

Trust Account Statement 2, ECF No. 8-1.[1]  His applications to proceed IFP (ECF Nos. 2, 8) are therefore **GRANTED**.

However, a prisoner allowed to proceed IFP must still pay the full amount of the $350.00 filing fee.  28 U.S.C. § 1915(b)(1).  If the prisoner has sufficient assets in his trust account, he must pay the filing fee in a lump sum.  If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available.  Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee.  28 U.S.C. § 1915(b)(4).  In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee.  Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

I.    Directions to Plaintiff's Custodian

Plaintiff is required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee.  The clerk of court is **DIRECTED** to send a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated.  It is **ORDERED** that the warden of the institution in which Plaintiff is incarcerated, or the sheriff of any county in which he is held in custody, and any successor custodians, shall each month cause to be

---

[1] Plaintiff apparently received a tax refund or stimulus check of $2020.93 deposited to his account on August 19, 2024.  Trust Account Statement 2, ECF No. 8-1.  The prison does not include those funds in Plaintiff's spendable balance, however, and the Court thus assumes that they are not accessible to Plaintiff.  *See id.*

remitted to the clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full.   28 U.S.C. § 1915(b)(2).   In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is authorized to forward payments from the prisoner's account to the clerk of court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.   It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee

II.    <u>Plaintiff's Obligations on Release from Custody</u>

Plaintiff should keep in mind that his release from incarceration/detention does not release him from his obligation to pay the installments incurred while he was in custody.   Plaintiff remains obligated to pay those installments justified by the income in his prisoner trust account while he was detained.   If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law.   Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

**PRELIMINARY SCREENING OF PLAINTIFF'S COMPLAINT**

I.    <u>Standard of Review</u>

The PLRA directs courts to conduct a preliminary screening of every complaint

filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a). Courts must also screen complaints filed by a plaintiff proceeding IFP. 28 U.S.C. § 1915(e). Both statutes apply in this case, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (citations omitted). A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise

a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555 (citations omitted).    In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim.  *Id.* at 556.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.   *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).   If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal.  *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

II.  Factual Allegations

Plaintiff's Complaint arises from his present incarceration at the Rutledge State Prison ("RSP").   Compl. 5, ECF No. 1.   Plaintiff contends he was assaulted by prison officials at RSP on November 16, 2022.   *Id.*   A few days prior to the assault, Plaintiff met with his mental health counselor, Counselor Thompson.   *Id.* at 5.[2]

---

[2] Plaintiff does not name Counselor Thompson as a Defendant.

During this meeting, Counselor Thompson denied Plaintiff's request to examine his mental health file and "to make emergent phone calls to [his] family members and other people." *Id.* at 7. Plaintiff contends that he "explained to Counselor Thompson that she was violating [his] civil rights," but "Counselor Thompson became enraged at [his] self-advocation, and decided to tell security staff a lie about what happened at our appointment." *Id.* Specifically, Plaintiff contends Counselor Thompson falsely claimed that Plaintiff "blocked her path as she was trying to exit the meeting room." *Id.* at 5.

Several days later, the RSP warden, Defendant Moses, approached Plaintiff's cell and stated, "I sympathize with you, but I want you to try that with me," in an apparent reference to Plaintiff's conflict with Counselor Thompson. Compl. 5. After Defendant Moses left, CERT officer Defendant Lewis approached Plaintiff's cell, stared at Plaintiff, made derogatory comments towards him, and told Plaintiff "multiple times" that he would assault him based on what Counselor Thompson said. *Id.* at 7. Shortly thereafter, Defendant Lewis and two other CERT officers—Defendants West and Jackson—ordered someone to unlock Plaintiff's cell, directed Plaintiff's cellmate to leave, entered the cell, and surrounded Plaintiff. *Id.* Defendant John Doe, another CERT officer, "stood in the door way watching what took place[.]" *Id.* Defendants Lewis, West, and Jackson then assaulted Plaintiff, punching him in the face, pulling him to the ground, and kicking him. *Id.* at 8.

Plaintiff contends he suffered various injuries, including loose teeth, a damaged eye, vision problems, swelling, bruising, and damage to his skin that caused

permanent scarring. Compl. 8. He also suffered "serious pain throughout [his] body for several days." *Id.* Despite these injuries, Plaintiff contends that another officer, Defendant Jane Doe, refused to provide Plaintiff with any medical treatment for five days, at which time Defendants Moses and Sparka, another warden, transferred Plaintiff to Augusta State Medical Prison. *Id.*[3] Plaintiff says he also complained about his injuries to several nurses, who said "they would do their best to have security esco[]rt [Plaintiff] to the medical department to receive the treatment needed for [his] injuries, but [he] was never taken to the medical department or received any treatment" while he was at RSP. *Id.* Plaintiff also states that in the days following the assault, Defendant Jane Doe "would walk by [his] cell," laugh at him, and "then walk away to show [Plaintiff] she did not care about [his] injuries, or [him] not receiving medical treatment partially due to her actions." *Id.* Defendant Lewis also "made jokes" about the attack. *Id.* at 10.

Plaintiff further alleges Defendant West asked him "not to file a grievance, report, or call anyone regarding the attack" and offered to bring Plaintiff a JPay tablet and some hygiene products from the store "as a bribe so [Plaintiff] would not report the attack." Compl. 10. Defendant West also offered to "make a recommendation for [Plaintiff] to be placed in a Columbus Transition Center administered by the GDC if [he] ever needed it for parole." *Id.*

---

[3] Plaintiff sued two wardens at RSP, but he left the second warden's name blank in the caption of his Complaint and the section identifying Defendants. *See* Compl. 1, 4. He later mentions Defendant Sparka by name and identifies him as a warden. *Id.* at 11. The Court therefore assumes Plaintiff intended to sue Defendant Sparka.

Plaintiff contends Defendants' action and inaction violated his federal constitutional rights.  Compl. 6.  Plaintiff also seeks to bring various state law claims against Defendants.  *Id.* at 12.  He seeks declaratory and injunctive relief, compensatory and punitive damages, a jury trial, costs, and "[a]ny additional relief this court deems just, proper, and equitable."  *Id.* at 6, 12.

III.    Plaintiff's Claims

    A.    *Claims against Doe Defendants*

As an initial matter, Plaintiff does not know the identities of two individuals he has named as Defendants and simply identifies them as John and Jane Doe. Compl. 1.  Generally, "fictitious party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).  There is a "limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'"  *See id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)).  Therefore, to proceed against an unnamed defendant, a plaintiff must typically provide a description of the defendant that is "sufficiently clear to allow service of process" on that defendant.  *Dean*, 951 F.2d at 1216 (finding that plaintiff should have been allowed to add "Chief Deputy of the Jefferson County Jail John Doe" as a defendant).

Although Plaintiff has done his best to give a physical description of the Doe Defendants, those descriptions are not sufficient to identify them for service of process.  While discovery may reveal the names of the Doe Defendants—and this is a "relevant consideration when determining whether a plaintiff can pursue a claim

against an unnamed defendant"—it is not sufficient absent some way of identifying these Defendants for service. *Vielma v. Gruler*, 808 F. App'x 872, 880-81 (11th Cir. 2020) (observing that "our precedent has never permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's identity" instead requiring "an unambiguous description of a defendant that enables service of process"). John and Jane Doe must therefore be dismissed from this case without prejudice.[4] Plaintiff, however, may move to amend his Complaint to name these individuals as Defendants if discovery reveals their names.

B.    *Excessive Force Claims against Defendants Lewis, West, and Jackson*

Plaintiff's alleges that Defendants Lewis, West, and Jackson assaulted him in violation of the Eighth Amendment. The Eighth Amendment's prohibition against cruel and unusual punishment forbids the "unnecessary and wanton infliction of pain," including the use of excessive force. *Moore v. Hunter*, 847 F. App'x 694, 697 (11th Cir. 2021) (quoting *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010)). A claim that prison officials used excessive force against an inmate "requires a two-prong showing: an objective showing of a deprivation or injury that is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official had a sufficiently culpable state of mind." *Id.*

---

[4] It appears that the only Defendant against whom Plaintiff seeks to raise inadequate medical treatment claims is Defendant Jane Doe. Compl. 8-9 (contending that Plaintiff asked Defendant Jane Doe to allow him to seek medical treatment for "several consecutive days," but she denied his requests). The only claim against Defendant John Doe appears to be for his failure to intervene in the assault by Defendants Lewis, West, and Jackson. *See id* at 7 ("CERT officer John Doe I . . . stood in the doorway watching what took place, and failed-to-protect me from the ensuing assault"). The potential validity of these claims is therefore not addressed in this Recommendation.

(quoting *Thomas*, 614 F.3d at 1304).   The objective showing "is responsive to contemporary standards of decency," and thus even "a de minimis use of force is cognizable under the Eighth Amendment if it is 'repugnant to the conscience of mankind.'"   *Id.*   (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010)).   To show subjective intent, the prisoner must show that a prison official applied force to a prisoner "maliciously and sadistically to cause harm" rather than "in a good faith effort to maintain or restore discipline."   *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)); *Williams v. Radford*, 64 F.4th 1185, 1195 (11th Cir. 2023).   To determine whether force was applied maliciously or sadistically to cause harm, the court considers factors which include:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

*Williams*, 64 F.4th at 1195 (quoting *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999)).

Plaintiff contends Defendants Lewis, Jackson, and West intentionally assaulted him "without any justification whatsoever," causing injuries.   *See, e.g.,* Compl. 8.   These allegations, when taken as true as they must be at this early stage, are sufficient to state a cognizable excessive force claim.   These claims shall therefore proceed for further factual development.

10

C.    *Retaliation Claims against Defendants Lewis, West, and Jackson*

Plaintiff also suggests that Defendants Lewis, West, and Jackson attacked him because of the incident with Counselor Thompson.   *See, e.g.,* Compl. 7.   He further contends that Defendant West asked Plaintiff not to file a grievance and brought him a tablet and hygiene items "as a bribe so [Plaintiff] would not report the attack."   *Id.* at 9-10.   Plaintiff may thus be attempting to state a retaliation claim.   To state a retaliation claim actionable under § 1983, an inmate generally needs to show "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the administrator's retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech."   *Williams*, 64 F.4th at 1192 (quoting *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (alteration in original)).

Even construing Plaintiff's allegations liberally and taking them as true, they fail to state a retaliation claim.   First, Plaintiff does not clearly explain how his interaction with Counselor Thompson—despite his characterization of it as "self-advocation"—amounted to conduct protected under the First Amendment.   *Cf., e.g., Williams*, 64 F.4th at 1192 (noting that a prisoner can establish the first element of a retaliation claim by showing that he complained about the conditions of his confinement).   More importantly, Plaintiff alleges that he was retaliated against "because of what Counselor Thompson told staff."   Compl. 7.   But he also states Counselor Thompson lied and told Defendants that Plaintiff prevented her from leaving the room in which they were conducting his mental health appointment.   *Id.*

at 6-7.    Thus, even if Defendants assaulted Plaintiff because they believed Counselor Thompson, the assault cannot be retaliation because blocking Counselor Thompson from leaving a room is not protected conduct.

Similarly, the fact that Defendant West gave Plaintiff a tablet and hygiene products and told Plaintiff he would recommend him for placement at a transitional center are not the kinds of adverse action that would have a chilling effect on future speech.    In other words, the fact that Defendant West treated Plaintiff favorably after the assault (and before Plaintiff filed this lawsuit) is simply not retaliation. *See, e.g., Williams*, 64 F.4th at 1192 (requiring a showing that prison official took an "adverse action" that "would likely deter a person of ordinary firmness from engaging in [protected] speech" to state retaliation claim) (quoting *Smith*, 532 F.3d at 1276)); *see also Retaliation*, *Black's Law Dictionary* (12th ed. 2024) (defining retaliation as "[t]he act of doing someone harm").    Plaintiff's retaliation claims should therefore be dismissed.

### D.    Claims against Defendants Moses and Sparka

#### 1.    Transfer Claims

Plaintiff next contends that Defendants Moses and Sparka transferred him to Augusta State Medical Prison five days after he was attacked without adequate due process.    Compl. 11.    Contrary to Plaintiff's assertions, however, a prisoner is not entitled to due process before he is transferred from one prison to another, even if "life in one prison is much more disagreeable than in another."    *Meachum v. Fano*, 427 U.S. 215, 225 (1976).    This claim is therefore subject to dismissal.

Plaintiff also suggests Defendants Moses and Sparka transferred him "to restrict [his] access to the courts, and as retaliation." Compl. 11. To the extent Plaintiff is attempting to state an access-to-courts claim, he fails to do so. "Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002)). "To have standing to seek relief under this right, however, a plaintiff must show actual injury by 'demonstrat[ing] that a nonfrivolous legal claim ha[s] been frustrated or . . . impeded.'" *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 797 (11th Cir. 2003) (alterations and omission in original) (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996)). In other words, "[t]he injury requirement means that the plaintiff must have an underlying cause of action the vindication of which is prevented by the denial of access to the courts." *Cunningham v. Dist. Att'y's Off. for Escambia Cnty.*, 592 F.3d 1237, 1271 (11th Cir. 2010). A plaintiff attempting to allege an access-to-courts claim must therefore describe the underlying action "well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher*, 536 U.S. at 416. Plaintiff has not identified any potential legal claim that was frustrated or impeded due to Plaintiff's transfer, much less a nonfrivolous legal claim. Any access-to-courts claim he seeks to raise fails to state a claim and must therefore be dismissed.

13

To the extent Plaintiff attempts to state a retaliation claim based on his transfer, he likewise fails to do so.   As noted above, Plaintiff has not clearly identified any protected conduct; nor has he explained why a transfer to Augusta State Medical Prison—presumably to obtain medical treatment—is the type of adverse action that would chill his First Amendment rights.   Moreover, Plaintiff has not alleged that Defendants Moses and Sparka were subjectively motivated to transfer him because he exercised his constitutional rights.   Plaintiff speculates that the transfer was retaliatory because it occurred only five days after Plaintiff was assaulted.   Compl. 11.   But generally, "temporal proximity alone cannot establish retaliation."   *Hall-Bey v. Hanks*, 93 F. App'x 977, 981 (7th Cir. 2004).   Absent any other specific facts suggesting that the transfer was retaliatory, these allegations against Defendants Moses and Sparka fail to state a claim, and any retaliation claims against them should likewise be dismissed without prejudice.

### 2.    **Supervisory Liability**

To the extent Plaintiff contends Defendants Moses and Sparka should be liable for the conduct of any of the remaining Defendants, he has also failed to state an actionable claim.   It is well-settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.   *See, e.g., Christmas v. Nabors*, 76 F.4th 1320, 1330 (11th Cir. 2023).   Instead, Plaintiff must allege specific facts to show that these Defendants either personally participated in the alleged constitutional violations or that a causal connection exists between his actions and a

14

subordinate's conduct.  *Id.*   This causal connection can be established if

> (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so"; (2) "the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights"; or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

*Hendrix v Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (alterations in original) (quoting *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008)).   "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  *Id.* (quoting *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1266 (11th Cir. 2010)).

Other than the decision to transfer him, Plaintiff does not contend that Defendants Moses and Sparka personally participated in any allegedly unlawful activity.   Plaintiff also fails to describe a history of similar issues, identify any potentially unlawful customs or policies, or establish either Defendant's knowledge that his subordinates were acting unlawfully.   Plaintiff has therefore failed to state a claim upon which relief may be granted.   *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 958 (11th Cir. 2019) (prisoner failed to state supervisory liability claim where he failed to "point to other instances" of similar unconstitutional conduct, "allege any facts indicating that [supervisors] were on notice of the officers' alleged deliberate indifference," or pleaded any facts related to the policies or customs that led to constitutional violations).   Any supervisory liability claims Plaintiff is attempting to

assert against Defendants Moses and Sparka must therefore be dismissed.[5]

E.    State Law Claims

Plaintiff also seeks to raise state law claims for negligence, breach of duties, assault and battery, and intentional infliction of emotional distress.   Compl. 12.   As noted above, however, the only claims that are proceeding for further factual development are certain of his claims against Defendants Lewis, West, and Jackson.   The Court should therefore decline to exercise supplemental jurisdiction over any state law claims brought against any Defendant other than Defendants Lewis, West, and Jackson and dismiss such claims without prejudice.   *See* 28 U.S.C. § 1367(c)(3).   Moreover, although the undersigned has found that some claims against Defendants Lewis, West, and Jackson should survive preliminary screening, it is possible they may fail if faced with a motion to dismiss or a motion for summary judgment.   Because federal jurisdiction over Plaintiff's state law claims against Defendants Lewis, West, and Jackson remains an unsettled issue, the undersigned finds it unnecessary and inappropriate to reach the merits of such claims at this early stage of the case.[6]   Thus, while some claims shall proceed, the Court does not express

---

[5] The significance of Defendant Moses' statement, "I sympathize with you, but I want you to try that with me" is unclear from the Complaint, but Plaintiff does not allege that this statement was made in a threatening manner or that it could somehow show that Defendant Moses directed his subordinates to assault Plaintiff because of the incident with Counselor Thompson.   Compl. 5.   The Court also notes that while Plaintiff alleges Defendant West is liable for the conduct of his subordinates, *id.* at 11, he has also alleged that Defendant West personally participated in the alleged assault, and his claims are already proceeding on that basis.

[6] The Court also notes that while Plaintiff states that he "believe[s he] is in compliance with Georgia's State Tort Laws and Acts," Compl. 13, he does not specifically allege that he has complied with O.C.G.A. § 50-21-26(a), which requires him to provide written notice to the state before pursuing state law tort claims against the state.   Plaintiff also failed to attach as exhibits to his Complaint "a copy of the notice of claim presented to the Department of Administrative Services together with the certified mail or statutory overnight delivery receipt or receipt for other delivery" as required by

16

any opinion on their viability at this time.

## CONCLUSION

Based on the foregoing, Plaintiff's motions to proceed IFP (ECF Nos. 2, 8) are **GRANTED**, and Plaintiff's Eighth Amendment excessive force claims and his state law claims against Defendants Lewis, West, and Jackson shall proceed for further factual development.   It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the Honorable Clay D. Land, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.   Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

---

O.C.G.A. § 50-21-26(a)(4), which undercuts his claim that he has complied with the Georgia Tort Claims Act.

## ORDER FOR SERVICE

Having found that Plaintiff's claims against Defendants Lewis, West, and Jackson require further factual development, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the PLRA. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff.   The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.   **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil**

**Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.    No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.    The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:    except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.    No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED** this 2nd day of July, 2025.

 s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE